## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

MARKUS DIXON and DEANNA
MAHAN, individually and on behalf of
all others similarly situated,

                Plaintiffs,

     - against -

MOLSON    COORS    BEVERAGE
COMPANY USA LLC,

             Defendant

Class Action Complaint

Jury Trial Demanded

Markus Dixon ("Plaintiff Dixon") and Deanna Mahan ("Plaintiff Mahan")

("Plaintiffs"), through Counsel, allege upon information and belief, except for

allegations about Plaintiffs, which are based on personal knowledge:

## I.   MIMOSA BASED ON SPARKLING WINE AND ORANGE JUICE

1.   Most historians attribute the creation of the mimosa to famed bartender

Frank Meier at the Ritz Hotel in Paris in 1925.

2.   Meier's original creation "called for a cube of ice in a wine glass, fresh

juice from half an orange, and equal parts champagne."

3.   He dubbed this cocktail a "mimosa" because its sharp and tangy taste

reminded him of the brightly colored Central American flower of the same name.

4.   As Meier's proteges spread out across Europe, they substituted

champagne with the sparkling wines of the regions, such as cava in Spain and

prosecco in Italy.

5.     Almost a hundred years later, a mimosa is still defined as consisting "of champagne (or other sparkling wine) and chilled citrus juice, usually orange juice."[1]



6.     A leading alcoholic beverages website, Flaviar, defines this cocktail as "orange juice [plus] sparkling wine."

7.     Oxford Reference indicates "mimosa" is the "American name for a mixture of sparkling wine and orange juice, known in the UK as buck's fizz."

8.     The mimosa is recognized by the International Bartender's Association ("IBA"), which describes how it is prepared by "Pour[ing] orange juice into a flute glass and gently pour[ing] [in] the sparkling wine."

9.     According to the Missouri Magazine, this State's "all digital premier magazine" that "Celebrat[es] why we love Missouri," the ideal mimosa is made with

---

[1] Mimosa, Wikipedia.

equal parts of sparkling wine or champagne and orange juice, "the perfect complement to a sunny summer affair."[2]

10.   The mimosa's celebratory feel can be had with little effort, since "it can be made relatively inexpensively…Because you're mixing your ingredients, it doesn't require the use of premium quality champagne or sparkling wine."

11.   The mimosa's "simple yet courtly qualities lend themselves well to morning consumption – acting as a sort of mood-lifting, waking concoction full of fizz and bright, citrusy acid with a natural sugary undertone."[3]

12.   As "brunch emerged as a social phenomenon, the Mimosa quickly claimed its place as the drink of choice for daytime indulgence," unseating the Bloody Mary.[4]

13.   Its "combination of sparkling champagne and tangy orange juice perfectly complemented brunch favorites like eggs Benedict and fluffy pancakes."

14.   Soon, it "became synonymous with leisurely Sunday mornings and lavish brunch gatherings."

15.   "Bottomless mimosas" are a brunch staple across Missouri, confirmed

---

[2] Staff, Summer Drinks – Mimosas Two Ways, Missouri Magazines, June 10, 2021.
[3] Beth McKibben, The Underappreciated Morning Cocktail – The Mimosa, GPB News, Mar. 9, 2018.
[4] The Drink Digest, The Fascinating History of Mimosa Cocktails, Medium, Sept. 12, 2023; The Breakfast Shoppe, How the Mimosa became the Official Drink of Brunch.

3

from the numerous establishments in this State which promote this..



16. Mimosas have even become "the most popular cocktail in the U.S.," "based on the number of states searching for each one most."



## II. EMERGENCE OF CANNED COCKTAILS

17. The Coronavirus pandemic, which caused consumers to stay home, resulted in changes in the way alcohol was consumed.[5]

18. While traditional mixed drinks are prepared at bars or restaurants,

---

[5] Audrey Altmann, Why Consumers are Still Reaching for Canned Alcoholic Drinks, SmartBrief, July 27, 2021.

government restrictions meant these options were no longer available.

19.    The market responded to consumer demand with the proliferation of ready-to-drink ("RTD") alcoholic beverages or "canned cocktails," which replicated their namesake drinks.

20.    This new wave of drinks were made with the same base alcohol as the versions of these beverages sold at bars or mixed at home.

21.    No longer would consumers need to accept alcoholic beverages with a neutral malt base and only flavored like their favorite cocktails, as they could buy these drinks already prepared in convenient formats.

22.    To meet this demand, Molson Coors Beverage Company USA LLC sells alcoholic beverages described as "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," under its Vizzy brand ("Product").





23.    Since the Product appears to be a "beer[] not made with both malted barley and hops," it does "not fall within the definition of a 'malt beverage' under the [Federal Alcohol Administration Act ('FAAA'), 27 U.S.C. § 201 *et seq.*]. 27 C.F.R. § 7.6(b).[6]

24.    The result is that its labeling is controlled by 27 C.F.R. § 25.142(a) and "the applicable labeling regulations for foods issued by the U.S. Food and Drug Administration." 27 C.F.R. § 7.6(b) citing 21 C.F.R. Part 101.

## III.  "MIMOSA HARD SELTZER" MISLEADS CONSUMERS

25.    The labeling and packaging are misleading for multiple reasons, and violates the Federal Food, Drug and Cosmetic Act ("FFDCA") and identical requirements of Ch. 196, Food, Drugs and Tobacco, Missouri Revised Statutes and

---

[6] This analysis is based on its second most predominant ingredient of sugar, presumably the base for the alcohol, and its description as "gluten free."

accompanying regulations. 21 U.S.C. § 301 *et seq*; MO Rev. Stat. § 196.010 *et seq*.;

Missouri Code of State Regulations ("CSR"), 19 CSR § 20-1.045 ("Food

Labeling").[7]

26.    These laws recognize that "consumers initially [] rely on extrinsic cues

such as visual information on labels and packaging," thereby "develop[ing] sensory

[and other] expectations" about what they are buying, in the short time in which they

decide what to buy.[8]

A.    Product Lacks Sparkling Wine

27.    First, the Product is "misbranded" and misleads consumers because its

labeling as "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges,

described as "Made With Real Orange Juice," is false or misleading. 21 U.S.C. §

---

[7] 19 CSR § 20-1.045(2) requires compliance with 21 C.F.R. Part 101. The Missouri Food Code ("MFC") at 19 CSR § 20-1.025 encompasses other labeling requirements, such as the "common or usual name" requirement in 21 C.F.R. Part 102, MFC § 3-602.11(B)(1) and "Standards of Identity." 19 CSR § 20-1.025(1) (incorporating MFC by reference). MFC § 3-201.11(C) mandates that "Packaged food shall be labeled as specified in law." MFC § 3-601.11 provides that "Packaged food shall comply with standard of identity requirements in 21 C.F.R. [Parts] 131-169 and 9 C.F.R. [Part] 319, Definitions and standards of identity or composition, and the general requirements in 21 C.F.R. Part 130 – Food Standards: General and 9 C.F.R. 319 Subpart A – General;" *see also* MO Rev. Stat. § 196.050 (no labeling requirements shall be more stringent than federal requirements).

[8] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.

343(a)(1); MO Rev. Stat. § 196.075(1).

28. This is because it does not contain sparkling wine, revealed through its absence from the fine print of the ingredient list on the back of the package, listed in order of predominance by weight, which identifies only "sparkling water," followed by the source of the base alcohol, "Cane Sugar."[9] 21 C.F.R. § 101.4(a)(1).



29. In place of an alcoholic beverage based on "sparkling wine," purchasers

---

[9] These ingredients refer to the "Pineapple Orange" version, and while all variations contain the same ingredients, their order and predominance varies slightly based on the four versions.

receive "Sparkling Water, Cane Sugar, Natural Flavors, Orange Juice Concentrate, Citric Acid, Tartaric Acid, Sodium Citrate, Dried Acerola Cherry Juice, [and] Stevia."

B. Consumers Get "Beer," Not a Mimosa

30.   Second, the Product is "misbranded" and misleading to consumers because "Mimosa Hard Seltzer" is not its "common or usual name." 21 U.S.C. § 343(i); MO Rev. Stat. § 196.075(9).

31.   "Mimosa Hard Seltzer" does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 U.S.C. § 343(i); MO Rev. Stat. § 196.075(9); 21 C.F.R. § 102.5(a); MFC § 3-602.11(B)(1).

32.   This is because despite the expectation of consumers that they will receive a canned mimosa with sparkling wine, based on "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," they are buying "beer." 21 U.S.C. § 343(i); MO Rev. Stat. § 196.075(9); 19 CSR § 20-1.045(2); 21 C.F.R. § 102.5(a); MFC § 3-602.11(B)(1).

33.   This is not disclosed as part of the required "statement of identity" on the front, back, or side the packaging. 21 C.F.R. § 101.3(b)(2)-(3); 19 CSR § 20-1.045(2).



34. This is only disclosed in the fine print on the reverse side of the cans, which requires buying and opening the case, and searching for this information at the bottom of the back of the can. 21 C.F.R. § 101.3(b)(2)-(3).




35.    For regular consumers to know that they are buying a beer, based on sugar, would require them to know the minute distinctions between beer based on sugar compared to beer based on malted barley and/or hops, tax treatment of such beverages by the Internal Revenue Service ("IRS"), and/or complicated regulations from federal agencies.

C.    <u>"Hard Seltzer" Misleads as to Base Alcohol</u>

36.    Third, the descriptor of "Hard Seltzer" after "Mimosa" is not "uniform among all identical or similar products" identified as "hard seltzer," demonstrated through the labeling of other alcoholic beverages. 21 C.F.R. § 102.5(a); MFC § 3-602.11(B)(1).

37.    While the last five years have seen a proliferation of alcoholic beverages described as "hard seltzer," "resident liquor geek" Jim Vorel with Paste Magazine observed that "few drinkers seem to understand what [hard seltzers] are at all."[10]

38.    The Alcohol and Tobacco Tax and Trade Bureau ("TTB") concurred, concluding that "hard seltzer" is insufficient to inform consumers about the nature of what they are buying.

39.    The leading trade journal, Hard Seltzer News, recognized that "[C]onfusion about [a] hard seltzer['s] alcohol base is prevalent on the web,

---

[10] Jim Vorel, <u>Cocktail Queries: What IS Hard Seltzer, Really, and Why is it so Popular?</u>, Paste Magazine, June 29, 2020.

somewhat due to the lack of information about this rapidly rising category," noting that a popular brand of "hard seltzer" "is not a vodka soda."[11]

40.   Vorel noted that "the most natural assumption for the consumer would probably be that hard seltzers are simply sparkling water, mixed with a bit of high-proof neutral spirit (like vodka, or grain alcohol) [or other alcohol type based on the name of the drink in question] and fruit flavoring [which] would essentially make them canned mixed drinks."

41.   However, products described as "hard seltzer" can have an alcohol base of distilled spirits, such as tequila or vodka, or malted barley and hops.

Alcohol                    Product

Tequila



---

[11] Erin Grafton, <u>Wait, What? White Claw Doesn't Contain Vodka?</u>, Nov. 30, 2020.

Vodka



Malted Barley

42.  Additionally, products described as "hard seltzer" are sold with an alcohol base of champagne and wine, shown through Cheers! Raspberry Champagne Hard Seltzer and Deep Brewing Company's Peach Deep Water Hard Seltzer, based on champagne, while Rose Hard Seltzer, Barefoot Hard Seltzer Wine-Based Seltzer, Cliche Wine Hard Seltzer, and Pacific Fruit Vineyards' Wine Hard Seltzer are based on wine.

Alcohol                                    Products

Champagne




Wine






43.   Fourth, the descriptor of "Hard Seltzer" after "Mimosa" makes its name

"confusingly similar to the name of [] other food[s] [] not reasonably encompassed within the same name." 21 C.F.R. § 102.5(a); MFC § 3-602.11(B)(1).

44.    Purchasers buying Defendant's Mimosa Hard Seltzer and expecting it to be like the hard seltzers sold by Cheers!, Deep Brewing Company, Crafters Union, Barefoot Hard Seltzer, Cliché, and Pacific Fruit Vineyards, based on sparkling wine, wine, and/or champagne, will not know it lacks such expected mimosa ingredients.

45.    "Mimosa Hard Seltzer" is misleading because unlike other competitor products, it is not based on wine, sparkling wine or champagne, but on fermented sugar, which qualifies it as a "beer."

D.    Similar Products Identified as in Semblance of Mimosa

46.    Fifth, "Mimosa Hard Seltzer" is misleading because it is not "uniform among all identical or similar products," as competitor canned mimosa-like beverages, without sparkling wine, wine, and/or champagne, prominently disclose they are in the semblance of mimosas. 21 C.F.R. § 102.5(a); MFC § 3-602.11(B)(1).

47.    One example is Smirnoff's Ice Watermelon Mimosa, which discloses on the front of the packaging and individual bottles that it is a "Malt Beverage," understood by consumers to mean it is closer to a beer, with alcohol based on fermentation and/or brewing, from malted barley and/or hops.

 

48.   Another example is Seagram's Escapes Berry Mimosa, which discloses on the front of the packaging that it is a "Malt Beverage," understood by consumers to mean it is closer to a beer, with alcohol based on fermentation and/or brewing, from malted barley and/or hops.



49.  That Seagram's Escapes Berry Mimosa is closer to a beer than a mimosa is also prominently displayed on the front of each bottle.



E.  <u>Competitor Canned Mimosas Contain Sparkling Wine</u>

50.  Sixth, "Mimosa" as part of the Product's name, "Mimosa Hard Seltzer," is misleading, because unlike numerous competitor canned mimosas which contain sparkling wine, Defendant's Product has a base alcohol obtained from sugar.

51.  These include the Mimosa Spritz from Miami Cocktail, Ohza's Classic Mimosa, Daps Beverage Co.'s O.G. Canned Mimosa, Picnic Brunch's Mimosa, Soleil Mimosa, and Suntide's Classic Mimosa.

  

  

52.   These mimosas are based on sparkling wine and orange juice, in contrast to Defendant's "Mimosa Hard Seltzer," based on sparkling water and a de minimis amount of orange juice, with its alcohol not from grapes, but from sugar.

53.   The result is that consumers are unable to adequately choose between products labeled similarly, even though "Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods." 21 C.F.R. § 102.5(a); MFC § 3-

18

602.11(B)(1).

F.  Label Fails to Disclose Absence of Sparkling Wine

54.  Seventh, "Mimosa Hard Seltzer" is a misleading "common or usual name," because it does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

55.  Though a characterizing ingredient of a mimosa is sparkling wine, "Mimosa Hard Seltzer" fails to disclose it lacks sparkling wine.

56.  Instead, purchasers receive a beer.

57.  Federal and state law require "Mimosa Hard Seltzer" to "include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

58.  The proportion of sparkling wine has a material bearing on the price of the Product, because sparkling wine obtained from grapes is more expensive than alcohol obtained from sugar. 21 C.F.R. § 102.5(b).

59.  The proportion of sparkling wine has a material bearing on consumer

acceptance of the Product, because its "labeling or [] appearance [] …create[s] an erroneous impression that [sparkling wine] is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

60.  The proportion of sparkling wine has a material bearing on consumer acceptance, because consumers prefer alcohol from grapes versus sugar, for several reasons. 21 C.F.R. § 102.5(b).

61.  Consumers prefer alcohol based on sparkling wine to alcohol based on sugar because (1) wine and sparkling wine are natural products, made from grapes, (2) consumers prefer the light, crisp taste of wine, more than neutral flavored alcohol obtained from sugar, (3) consumers know that wine has health qualities lacking from other types of alcohol, and is better for you than sugar and/or alcohol obtained from sugar, and (4) sparkling wine is higher quality compared to alcohol from sugar,

62.  "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," "create[s] an erroneous impression that [sparkling wine] is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

63.  This is because consumers seeing "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," will expect it to contain the other essential mimosa ingredient of sparkling wine.

64.  To prevent consumers from being misled, "Mimosa Hard Seltzer" was

required to indicate "The percentage of [the] characterizing [sparkling wine] ingredient…on the basis of its quantity." 21 C.F.R. § 102.5(b)(1).

65.   The amount of sparkling wine should have "be[en] declared by the words 'containing (or contains)   [0]   percent (or %)  [sparkling wine]  ' or '   [0]   percent (or %)   [sparkling wine]   ', with the first blank filled in with the percentage expressed as a whole number not greater than the actual percentage…and the second blank filled in with [that ingredient's] common or usual name [of sparkling wine]." 21 C.F.R. § 102.5(b)(2).

66.   Federal and state law required "Mimosa Hard Seltzer" to "include a statement of the presence or absence of [its] characterizing ingredient(s) [of sparkling wine] [because] [its] presence or absence…has a material bearing on price or consumer acceptance [and because] the labeling or the appearance…otherwise create[s] an erroneous impression that [sparkling wine] is present when it is not, and consumers may otherwise be misled about the presence or absence of [sparkling wine] [] in [Mimosa Hard Seltzer]." 21 C.F.R. § 102.5(c).

67.   To prevent consumers from being misled, "The [] absence of [sparkling wine] [was required to] be declared by the words…'containing (or contains) no   [sparkling wine]  ' or 'no   [sparkling wine]   ' or 'does not contain   [sparkling wine]   ', with the blank being filled in with the common or usual name of the ingredient [of sparkling wine]." 21 C.F.R. § 102.5(c)(1).

68. This statement, that the Product contains no sparkling wine, was required to "appear following or directly below the part of the common or usual name" of "Mimosa Hard Seltzer," "in easily legible boldface print or type." 21 C.F.R. § 102.5(c)(3).

G. "Mimosa Hard Seltzer," Pictures of Oranges, "Made With Real Orange Juice," and Orange Packaging, Causes Purchasers to Expect Sparkling Wine

69. Eighth, the Product is "misbranded" and misleads consumers, because "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," is a "false or misleading representation[s] with respect [to] another food," specifically, a mimosa. 21 C.F.R. § 101.18(a).

70. This is because the Product (1) is not a mimosa since it lacks sparkling wine, and (2) the labeling, "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," represents its alcohol as sparkling wine, derived from grapes, when this is misleading, because it is a beer, with alcohol obtained from sugar.

71. Ninth, the Product is "misbranded" and misleads consumers because "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," "suggests the name of one or more" ingredients, alcohol based on sparkling wine obtained from grapes, even though it contains beer, and alcohol based on sugar, obliquely disclosed in the fine print on the back of the

cans. 21 C.F.R. § 101.18(b).

72. However, "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," is misleading because even though it contains orange juice, it lacks sparkling wine, notwithstanding the absence of sparkling wine is disclosed in the fine print of the ingredient list, on the back of the package and cans. 21 C.F.R. § 101.18(b).

H. "Made With Real Orange Juice" Misleading

73. Tenth, the Product is "misbranded" and misleads consumers because its labeling as "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," is false or misleading. 21 U.S.C. § 343(a)(1); MO Rev. Stat. § 196.075(1).

 



74.    This is because despite being described as "Made With Real Orange Juice," with pictures of oranges, and orange packaging, the amount of orange juice is de minimis, in absolute and/or relative terms.

75.    This is confirmed by the fine print on the back of the package and cans, above the Nutrition Facts, that reveals the Product "Contains 1% Juice," and the listing "Orange Juice Concentrate" as the fourth most predominant ingredient in order of predominance by weight, after "Sparkling Water, Cane Sugar, [and] Natural Flavors." 21 C.F.R. § 101.4(a)(1).





76. "Natural Flavors" does not refer to "real orange juice," because it based on compounds isolated from fruits, not necessarily even oranges, designed to imitate the taste of real oranges.

77. Though some believe "The best mimosa ratio is equal parts sparkling wine and orange juice," while others prefer a "ratio of one-third juice to two-thirds

sparkling wine," purchasers of a product described as "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," will expect the Product to contain closer to thirty-three percent orange juice, as opposed to one percent.[12]

78.   Consumers seeing a product described as "Made With Real Orange Juice," in orange packaging, with pictures of oranges, will expect the amount of orange juice to be significant, in absolute and/or relative terms, instead of a negligible or de minimis amount of orange juice.

## IV.  CONCLUSION

79.   The labeling of "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," tells consumers they are buying a canned mimosa, defined by the presence of sparkling wine and orange juice.

80.   Instead, consumers get an alcoholic beverage based not on sparkling wine and orange juice, but based on sparkling water and sugar, or a "beer," with more "natural flavors" than orange juice.

81.   As a result of the false and misleading representations and omissions identified here, the Product identified here is sold at a premium price, at or around

---

[12] Adam and Joanne, Best Classic Mimosa, Inspired Taste; Heidi, How to Make the Perfect Mimosa, Foodie Crush.

$18.99 for twelve 12 oz cans, excluding tax and sales, higher than similar products, represented in a non-misleading way, and/or higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

82.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

83.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

84.   Plaintiff Dixon is a citizen of Missouri.

85.   Defendant is a Delaware limited liability company.

86.   Defendant is a citizen of Illinois and Wisconsin based on the citizenship of its members.

87.   The class of persons Plaintiff Dixon seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

88.   The members of the proposed class Plaintiff Dixon seeks to represent are more than one hundred, because the Product has been sold at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, and/or online, in this State, to citizens of this State.

89.   The Court has jurisdiction over Defendant because it transacts business

within Missouri and sells the Product to consumers within Missouri from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, and/or online, in this State, to citizens of this State.

90.   Defendant transacts business in Missouri, through the sale of the Product to citizens of Missouri from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, and/or online, in this State, to citizens of this State.

91.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

92.   Defendant has committed tortious acts outside this State by labeling, representing, and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, quantity, ingredients, attributes, features, origins, amount, and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

93.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, quantity, ingredients, attributes, features, origins,

amount, and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

94.  Venue is in this District with assignment to Western Division because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Jackson County, which is where Plaintiff Dixon's causes of action accrued.

95.  Plaintiff Dixon purchased, used, and/or consumed the Product in reliance on the labeling and packaging identified here in Jackson County.

96.  Plaintiff Dixon resides in Jackson County.

## PARTIES

97.  Plaintiff Dixon is a citizen of Jackson County, Missouri.

98.  Plaintiff Mahan is a citizen of Boone County, Missouri.

99.  Defendant Molson Coors Beverage Company USA LLC is a Delaware limited liability company.

100. Defendant's principal place of business is in Illinois.

101. Defendant is one of the world's largest seller of alcoholic beverages.

102. Plaintiffs are like most consumers who prefer alcoholic beverages based

on sparkling wine to those based on sugar, due to reasons including superior quality, health-related benefits, and/or taste.

103. Plaintiffs are among the many Americans who have interest in mimosas.

104. Plaintiffs have consumed drinks identified as mimosas before and/or know a mimosa is an alcoholic beverage based on sparkling wine and orange juice.

105. Plaintiffs are like all consumers and the public who associate a mimosa with an alcoholic beverage containing sparkling wine and orange juice.

106. Plaintiffs are like all consumers who look to the front label of products they buy to see what they are buying and to learn basic information.

107. Plaintiffs are like all consumers and are accustomed to the front label of packaging telling them about the components and ingredients in that product, and/or whether such products contain significant amounts of those ingredients, in absolute and/or relative terms.

108. In seeing a product labeled as a "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," Plaintiffs expected the Product's alcohol to be from sparkling wine instead of beer.

109. Plaintiffs expected the Product to contain sparkling wine and did not expect to buy a "beer."

110. Plaintiffs expected more than a mimosa "taste," but the alcoholic beverage known as a mimosa, based on the essential and traditional mimosa

30

ingredients of sparkling wine and orange juice.

111. Plaintiffs read, saw and relied on "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," and expected this meant the Product would contain sparkling wine and more than a de minimis amount of orange juice.

112. Plaintiffs did not expect the Product to lack sparkling wine nor did they know its alcohol would be based on sugar.

113. Plaintiff Dixon purchased the Product between February 2022 and December 2023, with the labeling identified here, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, and/or ethnic food stores in this State, in Jackson County, and/or other areas.

114. Plaintiff Mahan purchased the Product between February 2022 and December 2023, with the labeling identified here, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, and/or ethnic food stores in this State, in Boone County, and/or other areas.

115. Plaintiffs bought the Product at or around the above-referenced price.

116. Plaintiffs paid more for the Product than they would have had they known (1) it was not a mimosa, (2) it did not contain sparkling wine, (3) its alcohol

was based on sugar, (4) it was a beer, and/or (5) the amount of orange juice was de minimis, as they would not have bought it or would have paid less.

117. The Product was worth less than what Plaintiffs paid, and they would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

118. Plaintiffs seek to represent the following class:

> All persons in Missouri who purchased the Product with the labeling and packaging identified here, in Missouri, during the statutes of limitations for each cause of action alleged, in reliance on the representations and omissions identified here.

119. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

120. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

121. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive

representations, omissions, and actions.

122. Plaintiffs are adequate representatives because their interests do not conflict with other members.

123. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

124. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

125. The class is sufficiently numerous and likely includes several thousand people.

126. This is because Defendant sells the Product to consumers through hundreds of third-party retailers and online in the State Plaintiffs are seeking to represent.

127. Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Missouri Merchandising Practices Act ("MMPA")
Mo. Rev. Stat. § 407.025, *et seq.*

128. Plaintiff incorporates by reference paragraphs 1-81.[13]

129. The purpose of the MMPA is to protect consumers against unfair and

---

[13] To the extent any incorporation by reference is required.

deceptive practices.

130. This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

131. The MMPA considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

132. Violations of the MMPA can be based on other laws and standards related to consumer deception.

133. Violations of the MMPA can be based on public policy, established by norms, customs, statutes, law, or regulations.

134. Violations of the MMPA can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq.*; 15 CSR § 60-8.020(1).

135. An MMPA violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*, are violated.

136. An MMPA violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

137. An MMPA violation can occur whenever any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

138. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

139. In considering whether the label and/or packaging of food and beverages is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which this fails to prominently and conspicuously reveal facts relative to (1) the proportions or absence of certain ingredients, and/or (2) other facts concerning a product's attributes and characteristics, such as ingredients, quantity, size, amount, origin, type, and/or quality, which are of material interest to consumers. Mo. Rev. Stat. § 196.010(2).

140. Defendant's false and deceptive representations and omissions with respect to the Product's contents, attributes, features, origins, amount, quantity, ingredients, and/or quality, that it would contain sparkling wine and/or more than a de minimis amount of orange juice, are material in that they are likely to influence consumer purchasing decisions.

141. This is because consumers buying an alcoholic beverage identified as a "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," will expect what they are buying is a mimosa in a can, with (1) sparkling wine, an alcohol based on grapes, and/or (2) more than a de

minimis amount of orange juice, instead of having these ingredients replaced with alcohol based on sugar and natural flavor.

142. The replacement of ingredients, like sparkling wine and orange juice, with beer and natural flavor, is of material interest to consumers, because (1) consumers prefer sparkling wine and orange juice to beer and natural flavor, (2) sparkling wine from grapes and orange juice from oranges costs more than alcohol from sugar and orange flavor from extractives and oleoresins from fruits not necessarily including oranges, (3) consumers prefer the taste of sparkling wine and orange juice to alcohol from sugar and natural flavor, and/or (4) sparkling wine and orange juice have health qualities lacking in alcohol from sugar and natural flavor.

143. The Product could have included mimosa ingredients and/or more such ingredients, of sparkling wine and orange juice, but used other ingredients, such as beer, or alcohol from sugar, and natural flavor, because they cost less and/or substituted for mimosa ingredients.

144. The labeling of the Product violated the FTC Act and thereby violated the MMPA because the representations, omissions, packaging, and labeling, "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," created the erroneous impression it consisted of mimosa ingredients and/or more such ingredients, of sparkling wine and orange juice, when this was false, because it used other ingredients, such as beer, or alcohol

from sugar, and natural flavor, which cost less and/or substituted for mimosa ingredients.

145. The labeling of the Product violated the MMPA, because the representations, omissions, labeling, and packaging,

"Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," was unfair and deceptive to consumers, because instead of sparkling wine and orange juice, purchasers received beer and natural flavor.

146. The labeling of the Product violates laws, statutes, rules and regulations that are intended to protect the public. 15 CSR § 60-8.090(1)(A).

147. The labeling of the Product violated the MMPA, because the representations, omissions, packaging, and labeling, "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," when it replaced sparkling wine and orange juice, with beer based on sugar, and natural flavor, was contrary to Ch. 196, Food, Drugs and Tobacco, Missouri Revised Statutes and accompanying regulations, which adopted, where applicable, other laws and regulations, the purpose of which was to promote "honesty and fair dealing" to the public. MO Rev. Stat. § 196.010 *et seq*.; 19 CSR § 20-1.045.

|            Federal            |            State            |
|:-----------------------------:|:---------------------------:|
| 21 U.S.C. § 343(a)(1)         | MO Rev. Stat. § 196.075(1)  |

| | |
|---|---|
| 21 U.S.C. § 343(i) | MO Rev. Stat. § 196.075(9) |
| 21 C.F.R. § 101.18(a) | |
| 21 C.F.R. § 101.18(b) | 19 CSR § 20-1.045(2) |
| 21 C.F.R. § 101.3(b)(2)-(3) | |
| 21 C.F.R. § 102.5(a) | |
| 21 C.F.R. § 102.5(b) | |
| 21 C.F.R. § 102.5(b)(1) | |
| 21 C.F.R. § 102.5(b)(2) | MFC § 3-602.11(B)(1) |
| 21 C.F.R. § 102.5(c) | |
| 21 C.F.R. § 102.5(c)(1) | |
| 21 C.F.R. § 102.5(c)(3) | |

148. Plaintiffs believed the Product was a mimosa, defined by the presence of sparkling wine and orange juice, because of the label of "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," even though its alcohol was from beer, based on sugar, and substituted natural flavor for more orange juice.

149. Plaintiffs paid more for the Product and would not have paid as much if they knew that (1) its alcohol content was from beer, not sparkling wine, (2) its alcohol content was not from grapes but from beer, (3) it was not a canned mimosa but a "canned beer," (4) it was a mimosa-style drink and not a mimosa, and/or (5) the amount of orange juice was de minimis, in absolute and/or relative terms.

150. Plaintiffs seek to recover for economic injury, financial damages, and/or economic loss they sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the MMPA.

151. Plaintiffs will produce evidence showing how they and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, and other advanced methodologies.

152. As a result of Defendant's misrepresentations and omissions, Plaintiffs were injured and suffered economic and financial damages by payment of a price premium for the Product, which is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, and/or marketing identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as Counsel for the class;

2.  Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   May 20, 2024

Respectfully submitted,

/s/ Thomas A. Addleman

Addleman Law Firm LLC
Mo Bar: 51864
4041 NE Lakewood Way Ste 140
Lee's Summit MO 64064
(816) 875-5432
toma@creditlawcenter.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiffs*

Thomas A. Addleman

Addleman Law Firm LLC

*Counsel for Plaintiffs*

**Certificate of Service**

I certify that on May 20, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Thomas A. Addleman

41